# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| COREN HARRIS, | CASE NO. 5:22-CV-00623 |
| Plaintiff, |  |
|  | JUDGE J. PHILIP CALABRESE |
| vs. |  |
|  | MAGISTRATE JUDGE AMANDA M. KNAPP |
| ALICIA HANDWERK-CHAIR, |  |
| Defendant. | **REPORT & RECOMMENDATION** |

Petitioner Coren Harris ("Petitioner" or "Mr. Harris") brings this habeas corpus action pursuant to 28 U.S.C. § 2254, having filed his federal habeas petition on April 6, 2022 (herein referred to as "Petition").[1]  (ECF Doc. 1.)  Mr. Harris's Petition relates to his conviction on one count of sexual battery and his four-year prison sentence in Summit County Common Pleas Case No. CR-2019-01-0017.  (*Id.*)  This matter was assigned to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  The Petition is fully briefed, and the state court record has been filed.  (ECF Docs. 7, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 8.)

For the reasons set forth below, the undersigned recommends that the Court **DENY** Mr. Harris's Petition because Ground One is without merit and because Ground Two is not cognizable and/or without merit.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. Harris's Petition was docketed on April 19, 2022 (ECF Doc. 1) and placed in the prison mailing system on April 6, 2022 (*id.* at p. 7).

1

## I.        Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).  Petitioner has not meaningfully attempted to rebut the presumption that the facts as found by the state court are correct.[2]

The Ninth District Ohio Court of Appeals summarized the facts underlying Mr. Harris's conviction and sentence as follows:

> {¶8} At the time of the assault, D.H. was in her forties. D.H. and Harris are cousins and have known each other since elementary school. Prior to the assault, D.H. testified that she was very close to Harris.
>
> {¶9} On August 1, 2018, D.H. was supposed to pick up her close friend, Devin, whom she had also known since elementary school. The two were going to go to a clothing store. D.H. was late and Devin ended up taking a bus to go home. On his way home, D.H. called Devin and asked him to get off the bus and meet her. According to Devin, D.H. wanted Devin to drive because she was "a little bit lit." Devin agreed to do so and then drove them to the clothing store. On the way back, D.H. wanted to stop at Harris' house to get some marijuana.
>
> {¶10} In his testimony, Devin first described D.H.'s alcohol consumption in terms of shots, but subsequently testified that D.H. was drinking from a bottle of vodka and that she had a half a pint of vodka prior to getting to Harris' and a whole pint while at Harris'. Devin indicated that D.H. was pretty drunk. Devin also testified that D.H. smoked marijuana while at Harris'. D.H. testified that there was a bottle of alcohol with her in the car. Prior to meeting Devin, she estimated that she had one to two shots and was able to drive. Once Devin was driving, D.H. had more alcohol. She estimated that she had five or six more shots before arriving at Harris'. Once at Harris' D.H. asserted that she began drinking from the bottle. She estimated that she had "a couple swigs" from the bottle and smoked marijuana while she was

---

[2] In his Traverse, Petitioner fleetingly claims that he "challenges the allegations that he used zip ties" to tie up D.H. because the state "never introduced any zip ties."  (ECF Doc. 8, p. 5; *see* ECF Doc. 7-1, p. 74, ¶ 11 (stating that at one point during their interaction, Mr. Harris tied D.H.'s legs with zip ties).)  No zip ties were introduced at trial, but D.H. testified that Petitioner tied her with zip ties, providing a basis for the state court's finding.  (ECF Doc. 7-3, pp. 175-76.)  Petitioner does not challenge this factual finding anywhere else in his filings.  His bare claim that he did not use zip ties is insufficient to overcome the presumption that the state court's factual findings are correct.

at Harris'. D.H. described herself as being "intoxicated quite a bit" such that she did not "remember everything initially." However, she also testified that she was not "intoxicated where [she] was falling over * * * where [she] was like passed out." She testified that she was "drunk" but not "she need[s] an ambulance type of drunk." D.H. testified that the marijuana did not have much effect on her.

{¶11} When they arrived at Harris' house, D.H. went on the porch to play with some puppies and Devin and Harris were inside playing on the Xbox. Harris and Devin heard a yelp, and Harris became angry, went on the porch, grabbed D.H. from under her arms, and dragged her inside. The two began arguing and Devin stepped outside. Devin testified that, when he came back in, things had settled down. D.H. started dancing, but in the process of doing so, tripped over something and knocked a few things to the ground. Devin helped D.H. to the couch. Harris became angry, went to the kitchen, returned, and then zip tied D.H.'s legs. D.H. testified that she was on the ground when Harris put the zip ties on her, and she then sat down on the couch. D.H. and Harris started to argue again. Harris told D.H. to "shut up and just sit there [and was] just trying to make [D.H.] sit down." At the time, D.H. was not overly concerned about the zip ties and thought it was just "horseplay." Devin then left to go the store.

{¶12} D.H. testified that, after Devin left, Harris put her on the edge of the couch, pushed her legs up, pulled her leggings down, and had vaginal intercourse with her. When Devin returned, he found Harris having sex with D.H. Devin heard D.H. saying, "Stop. Stop. Get off of me. This is not right. This is not right." Devin went outside in shock and called D.H.'s son. Devin went to go back in and D.H. then came running out of the house and told Devin that "both of [them were] wrong[.]" D.H. was frantic and "shaking and crying[.]" D.H. refused to give Devin a ride and left in her car. She asserted that she was "very wide alert" after the trauma; it "sobered" her up. Harris ultimately gave Devin a ride. While they were in the car together, Harris told Devin that D.H. deserved it and asked why Devin did not join in.

{¶13} D.H. went to her grandmother's house. She initially did not call the police because Harris was family and she knew doing so would cause problems. A couple days later, D.H. went to Planned Parenthood but she was told she needed to go to the hospital. D.H. then proceeded to the emergency room. Devin met her there. D.H. was examined by Patti Riley, R.N., and a rape kit was performed. Ms. Riley documented several bruises that appeared to all be around the same age; some of the bruises appeared to look like fingertip impressions. D.H. was also questioned by police. Detective Dawn Forney, a detective with the Akron Police Department, interviewed D.H. at the hospital. D.H. told Detective Forney that she had been drinking the day of the assault and that she had "four little shots[.]" Upon returning home, D.H. located the leggings, shorts, and a feminine hygiene pad she was wearing at the time of the assault. They had not been laundered. The items were submitted to the police for possible testing. Stacy Violi, a forensic scientist with the Ohio Bureau of Criminal Investigation, testified that the vaginal and anal samples

from D.H. contained no DNA profile foreign to D.H. Ms. Violi indicated that the DNA profile recovered from D.H.'s leggings contained a mixture of DNA consistent with that of D.H. and Harris. The portion consistent with Harris' DNA profile was expected to be seen in the population less than one in one trillion times. The DNA profile obtained from the shorts was also a mixture with the major profile consistent with D.H. The minor profile was from a male but was not of sufficient quality or quantity to compare it to any individual.

{¶14} On cross-examination, D.H. acknowledged that she and Harris had had a consensual sexual encounter over a decade prior to the assault. She stated that it happened when they were both high, that they knew it was wrong, and it never happened again.

*State v. Harris*, 2020-Ohio-4365, ¶¶ 8-14 (Ohio Ct. App. Sept. 9, 2020), (ECF Doc. 7-1, pp. 73-75).

## II.      Procedural Background

### A.      State Court Conviction

On January 16, 2019, the Summit County Grand Jury indicted Mr. Harris on: one count of rape (R.C. § 2907.02(A)(2) and R.C. § 2907.02(B)) (Count One); one count of kidnapping (R.C. § 2905.01(A)(4) and R.C. § 2905.01 (C)(l)) (Count Two); and one count of sexual battery (R.C. §2907.03(A)(2) and R.C. § 2907.03(8)) (Count Three).  (ECF Doc. 7-1, pp. 6-7).  A supplemental indictment added repeat violent offender specifications to the first two counts. (ECF Doc. 7-1, p. 70, ¶ 2.)  Mr. Harris was arraigned and pled not guilty to all counts on January 18, 2019.  (*Id*. at p. 9.)

A jury trial on all counts commenced on September 4, 2019, and concluded on September 6, 2019.  (*Id*. at p. 12; ECF Docs. 7-2, 7-3, 7-4, 7-5, 7-6.)  On September 6, 2019, the jury returned a guilty verdict on the one count of sexual battery.  (ECF Doc. 7-1, p. 12; ECF Doc. 7-6, pp. 93-95.)  The jury found Mr. Harris not guilty on all other counts.  (*Id.*)

On October 2, 2019, the trial court sentenced Mr. Harris to a definite term of four years imprisonment with five years of post-release control. (ECF Doc. 7-1, p. 15.) The sentencing was journalized on October 4, 2019. (*Id*. at p. 14.)

**B.      Direct Appeal**

On November 1, 2019, Mr. Harris filed an appeal to the Ninth District Court of Appeals through new counsel. (*Id*. at pp. 19-20.) In his February 19, 2020 appellate brief, Mr. Harris raised the following assignments of error:

1.  The trial court erred by adopting the jury's verdict finding appellant guilty of sexual battery where the conviction was against the manifest weight of the evidence.

2.  The trial court erred by not providing jury instructions that specified that mere intoxication does not equate to substantial impairment.

(*Id*. at pp. 25-41.) The State filed its responsive brief on March 30, 2020. (*Id*. at pp. 45-63.) On September 9, 2020, the court of appeals overruled Mr. Harris's assignments of error and affirmed the trial court's judgment, finding Mr. Harris had failed to demonstrate that the jury's verdict was against the manifest weight of the evidence or that the trial court committed plain error when it did not instruct the jury that mere intoxication does not equate to substantial impairment. (*Id*. at pp. 70-80.) As to the second assignment of error, the court noted that Mr. Harris had not presented a developed argument in his brief to explain how the result of the trial would have been different if the desired instruction were given. (*Id.* at pp. 78-79.)

On October 26, 2020, Mr. Harris, pro se, filed a notice of appeal with the Supreme Court of Ohio (*id*. at pp. 82-83) and memorandum in support of jurisdiction (*id*. at pp. 86-92). He set forth one proposition of law: "The trial court erred by not providing jury instructions that specified that mere intoxication does not equate to substantial impairment." (*Id*. at p. 94.) On December 29, 2020, the Supreme Court of Ohio declined jurisdiction. (*Id*. at p. 103.)

5

**C.      Motions for Judicial Release**

Parallel to bringing direct and collateral challenges to his conviction, Mr. Harris filed

three motions for judicial release in the trial court.  He moved for judicial release on November

5, 2020, March 26, 2021, and October 15, 2021, (*id*. at pp. 105, 112, 164), and the trial court

denied all three motions (*id*. at pp. 110, 117, 170).

**D.      Delayed App. R. 26(B) Application to Reopen Direct Appeal**

On June 14, 2021, Mr. Harris, pro se, filed a delayed application to reopen his appeal in

the Ninth District Court of Appeals pursuant to Ohio App. R. 26(B) ("Rule 26(B) application").

(*Id*. at pp. 120-24.)  In the application, Mr. Harris alleged that his appellate counsel on direct

appeal was ineffective because she failed to raise a sufficiency of the evidence argument, and

because she failed to comply with Ohio Crim. R. 52(B) and Ohio App. R. 16(A)(7).  (*Id*. at pp.

120-23.)  On October 20, 2021, the court of appeals denied the application.  (*Id*. at pp. 136-37.)

On November 22, 2021, Mr. Harris filed a pro se notice of appeal with the Supreme

Court of Ohio (*id*. at pp. 139-40) and a memorandum in support of jurisdiction (*id*. at pp. 142-

55).  He raised the following propositions of law:

1.      Appellate Counsel's performance was deficient in violation of the Sixth
        Amendment to the U.S. Constitution for not raising and arguing a sufficient
        [sic] of the evidence assignment of error.

2.      Appellate counsel's performance was deficient in violation of the Sixth
        Amendment to the U.S. Constitution for failing to comply with the
        requirements under Criminal Rule 52(B) and Appellate Rule 16(A)(7).

(*Id*. at pp. 143, 148-55.)  The state filed a waiver of memorandum in response on December 8,

2021. (*Id*. at p. 160.)  On February 1, 2022, the Supreme Court of Ohio declined to accept

jurisdiction of Mr. Harris's appeal.  (*Id*. at p. 162.)

E.      **Federal Habeas Corpus Petition**

Mr. Harris raised two grounds for relief in his Petition:

**Ground One**: Appellate counsel's performance was deficient in violation of the Sixth Amendment to the U.S. Constitution for not raising and arguing a sufficient [sic] of the evidence assignment of error.

**Supporting Facts**: Petitioner contends that his appellate counsel should have raised a sufficiency of the evidence argument because "substantially impaired" is an element of sexual battery, thus, substantially impaired must be define [sic] during the sexual battery jury instruction, because it cannot be inferred, it must be proven beyond a reasonable doubt. Petitioner contends that the jury must be told that "mere intoxication does not equate to substantial impairment." Rather Petitioner's appellate counsel raised the trial court's jury instruction as plain error.

**Ground Two**: Appellate counsel's performance was deficient in violation of the Sixth Amendment to the U.S. Constitution for failing to comply with the requirements under Criminal Rule 52(B) and Appellate Rule 16(A)(7).

**Supporting Facts:** The Ohio Court of appeal found that "even if we were to assume that the trial court should have provided the instruction as argued by Harris, Harris has not explained how the request of the trial would have been different if that instruction was given. Petitioner contends that since the court appeals found that Appellate counsel failed to state "[b]ut for that error the outcome at trial would have been different[,]" he has developed no argument explaining why that would be so. *See* App.R. 16(A)(7); The court appeals essentially found appellate counsel's performance on direct appeal had been ineffective for failing to comply with the brief under App.R. 16(A)(7).

(ECF Doc. 1, pp. 4-5 (missing quotation mark in original).)  The Petition is ripe for review.

### III.    Law & Analysis

A.      **Standard of Review Under AEDPA**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner."  *Cullen v.*

*Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain

only those applications alleging that a person is in state custody 'in violation of the Constitution

or laws or treaties of the United States'" and in most instances, federal courts may not grant

habeas relief "unless . . . the applicant has exhausted state remedies."  *Id.* (citing 28 U.S.C. §§

2254(a), (b), (c).  Further, if an application for writ of habeas corpus involves a claim that was

"adjudicated on the merits in State court proceedings," the application "shall not be granted

unless the adjudication of the claim":

> 1. resulted in a decision that was contrary to, or involved an unreasonable
>    application of, clearly established Federal law, as determined by the
>    Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of
>    the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the

petitioner.  *See Cullen*, 563 U.S. at 181.

Mr. Harris challenges the performance of appellate counsel in both Grounds One and

Two of the Petition.  In Ground One, he asserts that he was deprived of the effective assistance

of counsel when his attorney failed to challenge the sufficiency of the evidence at his trial on

direct appeal.  (ECF Doc. 1, p. 4.)  In Ground Two, he asserts that he was deprived of the

effective assistance of counsel when his attorney failed to comply with certain state criminal and

appellate rules in briefing his challenge to the trial court's jury instructions on direct appeal.  (*Id.*

at p. 5.)  Respondent argues in response that the Petition should be denied because Mr. Harris has

failed to show that his appellate attorney's actions were "prejudicial" under the *Strickland v.*

*Washington* standard.  (ECF Doc. 7, pp. 14-15, 17-18.)

For the reasons set forth below, the undersigned recommends that the Court **DENY** the ineffective assistance of counsel claims asserted in Grounds One and Two.

**B.      Legal Standard for Claims of Ineffective Assistance of Counsel**

In *Strickland v. Washington*, the Supreme Court set forth two requirements to establish that an attorney was constitutionally ineffective.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  First, a petitioner must demonstrate "that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  In such cases, the petitioner must show that the representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.* at 689.  Second, a petitioner must demonstrate "that the deficient performance prejudiced the defense."  *Id.* at 687.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  To meet this requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with a reasonable probability being "a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).  The *Strickland* standard as outlined above applies to ineffective assistance of appellate counsel claims.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  But

9

appellate counsel is not obligated to advance every possible argument on appeal.  *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983).  "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 582 U.S. 521, 533 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986) and *Jones*, 463 U.S. at 751-53).  Thus, "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court."  *Id*. (citing *Robbins*, 528 U.S. at 288).  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Murray*, 477 U.S. at 536 (quoting *Jones*, 463 U.S. at 751-52).

Further, where a state court of appeals has reached the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under section 2254(d).  *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011).  The U.S. Supreme Court explained the double layer of deference federal courts must give state courts in reviewing *Strickland* claims under AEDPA as follows:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 F. App'x at 828 (quoting *Harrington*, 562 U.S. at 103, 105).

C.     **Ground One**

Respondent argues that Mr. Harris failed to show the sufficiency of the evidence claim

described in Ground One "would have had any better chance of success in overturning the

verdict than challenging the evidence under the manifest weight of the evidence standard, as

appellate counsel did."  (ECF Doc. 7, p. 14.)  Indeed, Mr. Harris's attorney did challenge the

verdict as against the manifest weight of the evidence, and the court of appeals performed a

detailed, independent review of the record before concluding that "the jury's verdict is not

against the manifest weight of the evidence."  (ECF Doc. 7-1, pp. 73-75.)  The court explained:

> While the testimony as to how much alcohol D.H. had varied, the record is clear
> that D.H. had a substantial amount of alcohol and also smoked marijuana. Some of
> that alcohol and all of the marijuana was consumed during D.H.'s visit to Harris'
> house. D.H. described herself as being "intoxicated quite a bit" such that she did
> not "remember everything initially." Devin, who was completely sober, testified
> that, when he met D.H., D.H. wanted him to drive because she was already "a little
> bit lit." By the time they were at Harris' Devin indicated that D.H. was pretty drunk.
> While D.H. also testified that she was not falling over or in need of an ambulance,
> D.H. did trip and fall while dancing and knocked some items off of an end table.
> Devin then helped D.H. to the couch. In order to control D.H. and get her to "shut
> up and just sit there[,]" Harris put zip ties around D.H.'s ankles. From those
> circumstances, it would not be unreasonable for the trier of fact to infer that D.H.
> was not only intoxicated, her "ability to appraise the nature of or control [her] own
> conduct [wa]s substantially impaired." R.C. 2907.03(A)(2). While D.H. did
> remember many details, she also admitted some difficulty remembering everything.
> In addition, the jury could have attributed her coordination issues to alcohol and/or
> marijuana impairment. Moreover, Harris and D.H. grew up together and there was
> evidence presented that the two had gotten high together in the past. Thus, there
> was evidence that Harris would be aware of what D.H. was like when she was
> impaired. In addition, there was evidence that Harris was so annoyed by D.H.'s
> drunken behavior that he zip tied her legs; this would also support the notion that
> Harris was aware of D.H.'s substantial impairment. Therefore, the jury could have
> also reasonably concluded that Harris knew that D.H.'s ability to appraise the
> nature of or control her own conduct was substantially impaired when he assaulted
> her.

(*Id.* at pp. 75-76.)  Respondent asserts that the same evidence "would substantiate the conclusion

that the conviction was supported by sufficient evidence," and that the appellate court's findings

were "an implicit finding that there was sufficient evidence to support the conviction because the

standard for manifest weight is higher than the standard for sufficiency." (ECF Doc. 7, pp. 14-15.) Mr. Harris asserts that this argument is contrary to Ohio and Supreme Court law and that there was insufficient evidence for the jury to convict him. (ECF Doc. 8, pp. 8-11.)

Under the double layer of deference federal courts must give to state courts in reviewing *Strickland* claims under AEDPA, Mr. Harris is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Perkins*, 411 F. App'x at 828 (citing *Harrington*, 562 U.S. at 103). "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* (citing *Harrington*, 562 U.S. at 105).

Here, in response to Mr. Harris's Rule 26(B) application challenging his appellate counsel's failure to raise a "sufficiency of the evidence" argument on direct appeal, the state court of appeals found:

> Appellant has not demonstrated that there is a genuine issue as to whether he was deprived of the effective assistance of counsel. Appellant has argued that appellate counsel was ineffective in failing to raise a sufficiency argument. Appellate counsel did raise a manifest weight argument asserting that the weight of the evidence did not support that the victim was substantially impaired or that Appellant knew that she was substantially impaired. <u>Evidence that supported overruling Appellant's manifest weight of the evidence argument would also support denying his proposed challenge to the sufficiency of the evidence</u>.

(ECF Doc. 7-1, p. 137 (emphasis added).) Respondent asserts that this finding correctly applied applicable law, and that Mr. Harris cannot show he was prejudiced under *Strickland* because "a reasonable probability did not exist that raising a sufficiency claim would have altered the outcome of the appeal." (ECF Doc. 7, p. 15.) Mr. Harris challenges Respondent's contention that the state court of appeals findings under the "manifest weight of the evidence" standard would implicitly require a similar finding under the "sufficiency of the evidence" standard,

12

arguing that Respondent's interpretation of applicable law is contrary to the U.S. Supreme Court decision in *Tibbs v. Florida*, 457 U.S. 31 (1982).  (ECF Doc. 8, pp. 8-9.)[3]

In *Tibbs*, the Supreme Court compared legal challenges based on a lack of "sufficient evidence" to support a conviction and challenges based on "the weight of the evidence" in the context of the Double Jeopardy clause.  *See* 457 U.S. at 42-43.  Historically, challenges to the sufficiency of the evidence require courts to ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that a reviewing court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury").  The *Tibbs* court explained that a reversal based on the sufficiency of the evidence has the same Double Jeopardy effect as a jury verdict of "not guilty" because "[a] reversal based on the insufficiency of the evidence . . . means that no rational factfinder could have voted to convict the defendant."  457 U.S. at 41.

Conversely, for challenges based on the weight of the evidence, the *Tibbs* court explained that "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony."  457 U.S. at 42.  The court equated such findings to a "deadlocked jury," explaining that "an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal."  *Id.*  The *Tibbs* court went on to explain that a reversal based on the weight of the evidence "can occur only after the State both has presented sufficient evidence to support a conviction and has persuaded the jury to convict."

---

[3] Petitioner also argues that the state court's reasoning is contrary to Ohio law.  (ECF Doc. 8, pp. 8-9.)  This argument is inapposite as federal habeas relief lies only for violations of federal law.  28 U.S.C. §§ 2254(a), (d)(1).

*Id.* at 42-43.  Such reversals "simply afford[] the defendant a second opportunity to seek a favorable judgment," and do not have a Double Jeopardy effect.  *Id.* at 43.

Here, the state court on direct appeal independently reviewed the evidence in the context of a "manifest weight of the evidence challenge" and found: (1) "it would not be unreasonable for the trier of fact to infer that D.H. was not only intoxicated, her 'ability to appraise the nature of or control [her] own conduct [wa]s substantially impaired"; and (2) "the jury could have also reasonably concluded that Harris knew that D.H.'s ability to appraise the nature of or control her own conduct was substantially impaired when he assaulted her."  (ECF Doc. 7-1, p. 76 (quoting R.C. 2907.03(A)(2)) (brackets in original).)  Later, in reviewing Mr. Harris's Rule 26(B) appeal, the court found no genuine issue as to counsel's effectiveness in not challenging the sufficiency of the evidence because the "[e]vidence that supported overruling Appellant's manifest weight of the evidence argument would also support denying his proposed challenge to the sufficiency of the evidence."  (*Id.* at 137.)

Mr. Harris asserts that the state court of appeals erred in finding its prior manifest weight of the evidence determination supported denial of a sufficiency of the evidence claim, since the two standards are different under *Tibbs*.  (ECF Doc. 8, pp. 8-9.)  But the *Tibbs* court explained that an appellate court's assessment of whether a jury's findings are against the weight of the evidence occurs only "after the State both . . . presented sufficient evidence to support a conviction and . . . persuaded the jury to convict."  457 U.S. at 42-43.  In other words, there must at least be sufficient evidence to support a verdict before the court proceeds to considering whether the jury's weighing of the evidence was reasonable.  Courts have therefore reasonably concluded that a court of appeals finding that a "conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Nash v.*

*Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007) (citing *State v. Lee*, 158 Ohio App.3d 129 (2004) ("[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency")); *see Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 861 (S.D. Ohio 2011) ("Given the interrelationship between insufficiency of the evidence and manifest weight claims, a state court's finding—that the verdict is not against the manifest weight of the evidence—also implicitly holds that there was sufficient evidence for the verdict.") (citing *Nash* and *Bell v. Warden, Warren Corr. Inst.*, No. 3:11-CV-135, 2011 WL 2746144, at *6 (S.D. Ohio June 22, 2011), *report and recommendation adopted* 2011 WL 2790204 (S.D. Ohio July 14, 2011)).

Applying the double deferential standard applicable to the *Strickland* claim in Ground One, the undersigned finds Mr. Harris has not shown that the denial of his appeal regarding the sufficiency of the evidence argument "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Perkins*, 411 F. App'x at 828 (citations omitted).  The earlier appellate decision finding the verdict was not against the manifest weight of the evidence implicitly included a finding that there was sufficient evidence to support the verdict.  Mr. Harris therefore has not shown that the appellate court erred "beyond any possibility for fairminded disagreement" when it found he failed to show he suffered prejudice when his appellate counsel did not raise a sufficiency of the evidence argument on direct appeal.  For the reasons set forth above, the undersigned recommends that the Court **DENY** Ground One of the Petition on its merits.

**D.     Ground Two**

In Ground Two, Mr. Harris asserts that his appellate counsel was ineffective because the briefing in support of his direct appeal did not include a developed argument as to how the result

15

of the trial would have been different if a "mere intoxication" jury instruction had been presented to the jury, in alleged violation of Ohio Crim. R. 52(B) and Ohio App. R. 16(A)(7).  (ECF Doc. 1, pp. 4-5.)  Respondent asserts in response that the appellate court was limited to a "plain error" review under Ohio Crim. R. 52(B) because trial counsel did not object to the jury instructions, and that Mr. Harris cannot show prejudice to support a *Strickland* claim when his 26(B) appeal continued to lack developed argument as to how the result of the trial would have been different if the jury instruction were included.  (ECF Doc. 7, pp. 17-18.)  In his Traverse, Petitioner asserts that the jury instructions "left the jury uninformed as to how to perform its duty," "affected the outcome of the trial[,] and resulted in a manifest miscarriage of justice" (ECF Doc. 8, p. 13), but does not otherwise explain how the jury instructions prejudiced him on appeal (*id.* at pp. 11-16).

Underlying the claim in Ground Two is Mr. Harris's disagreement with the trial court's jury instructions regarding "substantial impairment" as it related to his sexual battery charge. Mr. Harris was convicted of sexual battery under O.R.C. § 2907.03(A)(2), which states: "No person shall engage in sexual conduct with another when . . . [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."  O.R.C. § 2907.03(A)(2).  Mr. Harris acknowledges that the court correctly defined "substantial impairment" under Ohio law (ECF Doc. 8, p.12), but faults the trial court for failing to instruct the jury that "mere intoxication does not equate to substantial impairment" (ECF Doc. 1, p. 4), and for defining substantial impairment under the kidnapping charge rather than the sexual battery charge (ECF Doc. 8, pp. 6, 12-14).

Mr. Harris raised the following assignment of error on direct appeal: "The trial court erred by not providing jury instructions that specified that mere intoxication does not equate to substantial impairment."  (ECF Doc. 7-1, p. 25.)  In response, the state court of appeals held:

{¶20} The jury was instructed that: "Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 1st of August, 2018, in Summit County Ohio, the defendant engaged in sexual conduct with [D.H.], who was not his spouse, and the defendant knew that [D.H.'s] ability to appraise the nature of or control her own conduct was substantially impaired." In defining knowingly and knowledge, the trial court stated: "Because you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant an awareness of the probability that [D.H.'s] ability to appraise the nature of or control her conduct was substantially impaired." Despite Harris' argument to the contrary, substantially impaired was defined; however, the definition appeared in the section related to the charge for kidnapping, not sexual battery. Substantially impaired was defined by the trial court as a "present reduction, diminution or decrease in [D.H.'s] ability to either appraise the nature of her conduct or control her conduct." Nonetheless, Harris is correct that the trial court did not instruct the jury that every instance of intoxication does not equate to substantial impairment. *See Hansing*, 2019-Ohio-739, at ¶ 14 (discussing the concept in terms of a sufficiency analysis).

{¶21} Notwithstanding the foregoing, <u>even if we were to assume that the trial court should have provided the instruction as argued by Harris, Harris has not explained how the result of the trial would have been different if that instruction was given. *See Higgins*, 2018-Ohio-476, at ¶ 27. While Harris has stated that "[b]ut for that error the outcome at trial would have been different[,]" he has developed no argument explaining why that would be so. *See* App.R. 16(A)(7).</u> As discussed above, the weight of the evidence supported the conclusion that D.H.'s ability to appraise the nature of or control her own conduct was substantially impaired and that Harris knew the same.

{¶22} Harris has not met his burden of demonstrating that the trial court committed plain error in instructing the jury. Harris' second assignment of error is overruled.

(ECF Doc. 7-1, pp. 78-79 (emphasis added).)  Based on the underlined findings above, Mr. Harris argued in his Rule 26(B) application that appellate counsel's representation was ineffective due to "fail[ure] to comply with the requirements under Criminal Rule 52(B) and Appellate Rule 16(A)(7)."  (*Id.* at 143.)  In ruling on the Rule 26(B) application, the state court of appeals held:

Appellant also essentially argues that appellate counsel was ineffective in failing to develop an adequate argument that the trial court committed plain error in failing to provide an instruction that mere intoxication does not equate with substantial impairment. However, <u>Appellant has not demonstrated that there is a reasonable probability that he would have been successful if he had presented the claim on</u>

appeal; Appellant merely speculates that the jury concluded that every instance of voluntary intoxication equates with substantial impairment absent being instructed to the contrary. *See State v. Brown,* 9th Dist. Lorain No. 20CA011618, 2021-Ohio-2540, ¶ 63 ("Prejudice owing to ineffective assistance of counsel cannot be demonstrated by means of conjecture or speculation.").

(*Id.* at p. 137 (emphasis added).)

Respondent argues that Mr. Harris has not satisfied the "prejudice" prong of the *Strickland* analysis because his 26(B) application "failed to show a reasonable probability that his more particular instruction would have resulted in a favorable outcome at trial or that a fuller development of the jury instruction claim would have altered the result on appeal."  (ECF Doc. 7, p. 18.)  But the undersigned also observes that numerous elements of the claims asserted in Ground Two are not cognizable on federal habeas review because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).  This standard is implicated at two levels, first by Mr. Harris's challenge to his attorney's compliance with Ohio Criminal Rule 52(B) and Appellate Rule 16(A)(7) in preparing the appellate brief, and second by Mr. Harris's underlying challenge to the jury instructions adopted by the trial court, which pertain to the application of state law.[4]

"Because 'federal habeas corpus relief does not lie for errors of state law,'" federal courts "may grant the writ based on errors in state jury instructions only in extraordinary cases."

---

[4] In his Traverse, Petitioner also compares his case to a Supreme Court of Ohio decision, *State v. Leyh*, 166 Ohio St.3d 365 (2022), that addressed state procedures under Ohio App. R. 26(B).  (ECF Doc. 8, pp. 15-16.)

*Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (quoting *Lewis*, 497 U.S. at 780); *see also*

*Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) (explaining that, because "it is not the

function of a federal habeas court to correct errors in state law," granting federal habeas relief

and setting aside a conviction based on a state trial court's failure to give a jury instructions

interpretating state law would only be warranted "under the most unusual circumstances");

*Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("Generally speaking, a state court's

interpretation of the propriety of a jury instruction under state law does not entitle a habeas

claimant to relief.") (citing 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68).  "To warrant habeas

relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm

that they rendered the entire trial fundamentally unfair. The burden is even greater than that

required to demonstrate plain error on appeal.'"  *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir.

2001).  Therefore, the question on federal habeas review is not whether the state trial court failed

to cure a particular ailing jury instruction, but "whether the ailing instruction by itself so infected

the entire trial that the resulting conviction violates due process."  *Daniels*, 501 F.3d at 741

(quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

 To the extent that Mr. Harris is seeking federal habeas relief based on the application of

state procedural rules or because the trial court's jury instructions violated state law, he fails to

state a claim upon which federal habeas relief may be granted, and the undersigned recommends

that the Court **DISMISS** that claim as not cognizable.

 Conversely, to the extent Mr. Harris is asserting a federal claim for ineffective assistance

of counsel under the *Strickland* standard, and that any errors under state law "rendered the entire

trial fundamentally unfair," *Buell*, 274 F.3d at 355, this Court must apply the double deferential

standard applicable to such claims under AEDPA to assess whether the state appellate court's

findings—that Mr. Harris "has not demonstrated that there is a reasonable probability that he would have been successful if he presented the [jury instruction] claim on appeal" and that he "merely speculates that the jury concluded that every instance of voluntary intoxication equates with substantial impairment  absent being instructed to the contrary" (ECF Doc. 7-1, p. 137)— were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Perkins*, 411 F. App'x at 828.

Considering first the state court's focus on Mr. Harris's failure to show a reasonable probability of success if his appellate counsel had made the proposed arguments, the undersigned finds the state court's focus was consistent with *Strickland*.  The *Strickland* court specified that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . as a result of the alleged deficiencies."  466 U.S. at 697.  After finding Mr. Harris had failed to demonstrate prejudice, the state court was not required to address the deficiency prong of the *Strickland* analysis.  *See id.* ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed."); *see also Neuhard v. United States*, 119 F.4th 1064, 1071 (6th Cir. 2024) ("Neuhard fails on the prejudice prong, so we need not consider deficient performance.") (citing *Smith v. Mitchell*, 348 F.3d 177, 199–200 (6th Cir. 2003)).

Considering next the state court's conclusion that Mr. Harris "merely speculate[d] that the jury concluded that every instance of voluntary intoxication equates with substantial impairment absent being instructed to the contrary" (ECF Doc. 7-1, p. 137 (citing *Brown,* 2021-Ohio-2540 at ¶ 63)), the undersigned also finds this conclusion was appropriate under the *Strickland* standard.  *See, e.g.*, *Harrington*, 562 U.S. at 111-12 (finding under *Strickland*'s prejudice standard that "[t]he likelihood of a different result must be substantial, not just

conceivable"); *Koras v. Robinson*, 123 F. App'x 207, 212 (6th Cir. 2005) ("Where 'one is left

with pure speculation on whether the outcome of the trial . . . could have been any different,'

there is an insufficient showing of prejudice.") (quoting *Baze v. Parker*, 371 F.3d 310, 322 (6th

Cir. 2004)); *Wilds v. Warden, Chillicothe Corr. Inst.*, 745 F. Supp. 3d 591, 605 (S.D. Ohio 2024)

(accepting magistrate judge's finding that defendant did not suffer prejudice where his argument

depended on "pure speculation").

A review of Mr. Harris's Rule 26(B) application is consistent with the state court's

finding that his arguments regarding prejudice resulting from trial counsel's performance on

direct appeal were merely speculative.  In support of his Rule 26(B) argument that appellate

counsel's arguments were insufficiently developed on direct appeal, Petitioner asserted:

> 6. Appellant argues that *it seems likely* that the jury could have considered the court's definition of "substantially impaired" for only the kidnapping charge since this instruction immediately followed.
>
> 7. Appellant contends that for appellate counsel to meet the requirements under Criminal Rule 52(B) and Appellate Rule 16(A)(7), appellate counsel should have argued that "when the jury was determining whether appellant committed sexual battery, the jury likely gave "substantially impaired" the common and ordinary definitions of these words and *likely concluded* that every instance of intoxication equates with substantial impairment," which is contrary to Ohio law.

(ECF Doc. 7-1, p. 123, ¶¶ 6-7 (emphasis added).)  Mr. Harris's arguments before this Court are

similarly speculative (ECF Doc.  8, p. 13), without developed explanation as to how appellate

counsel's failure to better articulate his arguments on direct appeal resulted in prejudice.

Applying the double deferential standard applicable to the *Strickland* claim in Ground

Two, the undersigned finds that Mr. Harris has failed to show that the denial of his appeal as to

appellate counsel's argument challenging the trial court's jury instructions was "so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement."  *Perkins*, 411 F. App'x at 828 (citations omitted).

For the reasons set forth above, and to the extent Mr. Harris is asserting a federal constitutional claim in Ground Two, the undersigned recommends that the Court **DENY** Ground Two of the Petition on its merits.

### IV.     Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Mr. Harris's Petition because Ground One is without merit and because Ground Two is not cognizable and/or without merit.

Dated: May 1, 2025

*/s/ Amanda M. Knapp*
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).